UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KRISTEN ANN HARGRAVE,

             Plaintiff,

    -vs-

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY

            Defendant.
_____

**DECISION AND ORDER**
**No. 13-CV-6308(MAT)**

## INTRODUCTION

Plaintiff, Kristen Ann Hargrave ("Plaintiff" or "Hargrave"), brings this action under Title II of the Social Security Act ("the Act"), claiming that the Commissioner of Social Security ("Commissioner" or "Defendant") improperly denied her application for Disability Insurance Benefits ("DIB").

Currently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons set forth below, I grant the Commissioner's motion, deny the Plaintiff's motion, and dismiss the Complaint.

## PROCEDURAL HISTORY

On November 7, 2009, Plaintiff filed an application for DIB, alleging disability as of June 1, 2006, which was denied. Administrative Transcript [T.] 115-123, 45-46.  A hearing was held on February 17, 2011 before administrative law judge ("ALJ")

Michael W. Devlin, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert.  T. 22-44.  On November 28, 2011, the ALJ issued a decision finding that Plaintiff was not disabled during the relevant period June 1, 2006 to June 30, 2006.  T. 8-21.

On April 19, 2013, the Appeals Councils denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  T. 1-4.  This action followed.

### FACTUAL BACKGROUND

Plaintiff, who was born in 1960, testified that she has a high school diploma and an associate's degree.  T. 37, 115.  She testified that she previously worked as a computer programmer in the 1990s and as a concession stand attendant in 2007 and 2005. T. 26-29, 36-38.  She testified that she was unable to work during the relevant time period due to constant back pain that radiated into her legs, asthma, and mental problems.  T. 29-35, 37-38. Additionally, she testified that she had a problem with alcohol, but that she had not had a drink in approximately nine years. T. 36.

Plaintiff testified further that she had difficulty walking, trouble sitting, and that it was hard for her to sit for more than a half hour or an hour.  T. 32.  She testified that, due to her ongoing pain, she generally stays home on the couch, that her pain

limits her ability to grocery shop, which her husband usually does because of the inability to stand, walk, and push the cart.  T. 35.

**Relevant Medical Evidence**

Treatment records pre-dating June 1, 2006 show that Plaintiff had a history of chronic low back and radicular pain that was treated with nerve root injections, prescription medication, and physical therapy (including the use of a home TENS unit).  Progress notes from 2004 show impressions of lumbar spondylitic disease with recess and central stenosis at L4-L5.  T. 342-343, 350-368.

In November 2006, Plaintiff saw James Budd, M.D. for back pain, at which time he noted that Plaintiff was applying for disability.  T. 346.  Dr. Budd examined Plaintiff and reported that:  her lumbosacral spine exhibited muscle spasms;  pain was elicited by motion;  there was no tenderness exhibited on palpation;  no deformity was exhibited;  and her straight leg raises were negative.  T. 347.  Dr. Budd also reported no sensory abnormalities, that Plaintiff's strength was normal, her heel/toe walking was normal, her knee and ankle jerk were normal, and that she had an antalgic gait.  T. 347.  He noted that Plaintiff was "anxious to find a solution to her disabling back pain" so that she could find work, but that "in the meantime, she clearly is not capable of working in any capacity."  T. 347.

In December 2008, Plaintiff saw treating physician Rajendra Singh, M.D., complaining of depression, anxiety and chronic low

back pain.   Dr. Singh noted that Plaintiff appeared anxious and
depressed, and a physical examination of Plaintiff revealed
tenderness over the lumbosacral spine and sacroiliac joints.
T. 237.  Dr. Singh noted that "[a]ll the movements of the spine
[are] not painful" and that Plaintiff's straight leg raising test
is "up to 30 degrees bilaterally."  T. 237.  The doctor assessed
that "[b]ecause of [Plaintiff's] chronic low back pain, patient is
not able to work in any capacity."   T. 238.   Plaintiff saw
Dr. Singh again in January 2009 for leg cramps and chronic low back
pain.   Plaintiff reported taking Naxopren, Cyclobenzaprine,
Nortiptyline and Gabapentin, but that her pain persisted.  T. 231.
A physical examination at that time revealed tenderness over
Plaintiff's lumbosacral spine and sacroiliac joints with pain on
forward flexion and lateral bending motions.   T. 231.   Plaintiff
returned to Dr. Singh in February, March, April and October 2009,
complaining of, among other things, continued back pain, headaches,
left knee pain, and pain in her hands.   Plaintiff's condition
remained generally unchanged throughout this time, and no
significant findings were reported.  T. 241-242, 248, 377-378, 381-
382, 385-387.

On February 13, 2009, Plaintiff saw Thomas Cesarz, M.D. for
low back and buttock pain, which Plaintiff reported worsened with
walking, standing, sitting, lying down, and lifting.   T. 243.
Dr. Cesarz reported a decrease in Plaintiff's lumbar flexion and

ordered an MRI, which showed that Plaintiff's condition had
progressed from 2003 into grade II spondylolisthesis of the L4 on
L5.   T. 243-244.   On March 5, 2009, Plaintiff underwent another
MRI, which showed grade II anterolisthesis with severe narrowing of
the central canal and bilateral neural foramina at the L4-L5 level
with possible bilateral pars defect of the LS.   T. 227.   On
March 20, 2009, Plaintiff was seen by Dr. Cesarz again, complaining
of continued low back and buttock pain.   Plaintiff was referred to
Robert Molinari, M.D. for surgical evaluation.   T. 219.

In April 2009, Plaintiff met with Dr. Molinari who assessed
that Plaintiff had severe back and bilateral back pain that had
been "incapacitating and refractory to conservative measures over
several years." T. 223.   He reported that Plaintiff was "unable to
perform physical activity and unable to alleviate her pain with
conservative measures."   T. 223.   Dr. Molinari explained that
"[d]ue to her severe instability and poor quality of life," she was
a good candidate for surgery.   T. 223.   Upon examination,
Dr. Molinari reported that Plaintiff had a reduced range of motion
with pain on extension and flexion of the back, buttock radiating
down into her legs.   He also noted that flexion produced severe
pain in Plaintiff's back.   Plaintiff's straight leg raise was
within normal limits, her hip flexor, abductors and adductors, and
quadriceps and hamstring strength was full.   Plaintiff's sensation

was diminished to L5 to light touch bilaterally, and the remainder of her sensation was within normal limits.  T. 222.

**Consultative Examinations**

In December 2009, Plaintiff underwent a consultative examination by Harbinder Toor, M.D., who opined that Plaintiff had "moderate limitations" in standing, walking, squatting, bending or heavy lifting, "mild" difficulties with her hands for grasping, holding and writing, and that she should avoid irritants and other factors that could precipitate her asthma.  T. 287.

Also in December, Plaintiff underwent a consultative psychological evaluation by Christine Ransom, Ph.D.  T. 281. Dr. Ransom assessed that Plaintiff could follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration for simple tasks, maintain a simple regular schedule and learn simple new tasks.  Dr. Ransom opined further that Plaintiff would have moderate difficulty performing complex tasks, relating adequately with others and appropriately dealing with stress due to major depressive disorder and panic disorder.  T. 281.

In January 2010, non-examining State Agency psychologist R. Nobel reviewed the evidence in the file and assessed that Plaintiff had "mild-moderate" work-related limitations, and opined that these limitations would not preclude her from "working simple task[s]."  T. 326.  Dr. Nobel reported that there was insufficient

medical evidence to make a determination as to the severity of
Plaintiff's mental limitations during the relevant time period.
T. 296, 328.   In August 2011, Thomas H. Weiss, M.D. completed a
Medical Interrogatory Physical Impairment form and reported that
Plaintiff had a history of low back pain, leg pain, and a left knee
injury. T. 399-405. Dr. Weiss reviewed the medical evidence in the
file and checked the "no" box when asked if there is sufficient
objective medical evidence to allow him to form opinions about the
nature and severity of the claimant's impairments during the
relevant time period. T. 400. Dr. Weiss also checked the box "no"
when asked if any of the claimant's impairments established by the
medical evidence, combined or separately, meet or equal any
impairment described in the Listing of Impairments. T. 401. He
elaborated with respect to this answer, stating "[Plaintiff] did not
meet orthopedic listings 1.02 major dysfunction of a joint o[r] 1.04
disorders of the Spine because of inadequate documentation." T.
401. Further, Dr. Weiss identified no work-related limitations on
the portion of the form dedicated to his medical source statement.
T. 403-406.

## DISCUSSION

### I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to
hear claims based on the denial of Social Security benefits.
Section 405 (g) provides that the District Court "shall have the

power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g)(2007). The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

Section 405 (g) limits the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Mongeur v. Heckler, 722 F.2d 1033, 1037-8 (2d Cir. 1983) (finding a reviewing court does not try a benefits case de novo).

Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642

(2d Cir. 1988).  A party's motion will be dismissed if, after a review of the pleadings, the Court is convinced that the party does not set out factual allegations that are "enough to raise a right to relief beyond the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

## II.  The Commissioner's Decision Denying Plaintiff Benefits is Supported by Substantial Evidence in the Record

The Social Security Administration has promulgated a five-step sequential analysis that the ALJ must adhere to for evaluating disability claims.  20 C.F.R. § 404.1520.

The ALJ in this case used this sequential procedure to determine Plaintiff's eligibility for disability benefits.  The ALJ found that Plaintiff:  met the insured status requirement on June 30, 2006;[1] did not engage in substantial gainful activity during the relevant time period;  had the severe impairments of back pain with bilateral leg pain, spondylolisthesis, left knee pain due to a remote injury, and asthma, and the non-severe impairment of alcohol dependence, but that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments;  had the residual functional capacity ("RFC") to perform sedentary work with certain

---

[1]

To qualify for disability insurance benefits, one must be both disabled and insured for disability. 42 U.S.C. § 423(a)(1)(A) and (E); 20 C.F.R. § 404.101, 404.120, and 404.315(a). The date that a person last met these requirements is commonly referred to as "the date last insured."

limitations; and was capable of performing past relevant work as a computer programmer, which did not require the performance of work related activities precluded by Plaintiff's RFC.  Therefore, the ALJ concluded that Plaintiff was not disabled during the relevant period.  T. 17.

## III. The ALJ's Credibility Determination

Plaintiff argues that the ALJ erred in his credibility assessment because he failed to consider the effects of Plaintiff's pain, and because he failed to apply the proper legal standards. Pl's Mem at 12 (Dkt. No. 17).  The Court finds no merit to this argument for the reasons discussed below.

A claimant's statements of pain or other subjective symptoms cannot alone serve as conclusive evidence of disability.  Genier v. Astrue, 606 F.3d 46, 49 (2d. Cir. 2010) (citing 20 C.F.R. § 404.1529(a)).  In evaluating a claimant's assertions of his subjective symptoms, the ALJ must follow a two-step analysis.  Id. First, the ALJ determines if a claimant has a "medically determinable impairment that could reasonably be expected to produce the symptoms alleged."  Id. (citing 20 C.F.R. § 404.1529(b)). Second, if an impairment of that nature is present, the ALJ must then determine "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" in the administrative record.  Id. (alteration in original) (quoting 20 C.F.R. § 404.1529(a).

If the plaintiff offers statements about pain or other symptoms that are not substantiated by the objective medical evidence, "the ALJ must engage in a credibility inquiry." Meadors v. Astrue, 370 F. App'x 179, 183 (2d Cir. 2010) (summary order) (citing 20 C.F.R. § 404.1529(c)(3)). In making this credibility determination, the ALJ must consider seven factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken; (5) other treatment received; (6) other measures taken to relieve symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii); see also Meadors, 370 F. App'x at 184 n.1.

The ALJ, however, is not required to discuss all seven factors in his decision as long as the decision includes, as it does here, precise reasoning, is supported by evidence in the case record, and clearly indicates the weight the ALJ gave to the claimant's statements and the reasons for that weight. Snyder v. Barnhart, 323 F. Supp. 2d 542, 546-47 & n.5 (S.D.N.Y. 2004) (upholding ALJ's credibility assessment where ALJ incorporated internal consistency of the plaintiff's symptom statements and consistency with his treatment history into his decision, even though ALJ did not explicitly discuss all seven credibility factors). "Because the ALJ

has the benefit of directly observing a claimant's demeanor and other indicia of credibility," his decision to discredit subjective testimony is "entitled to deference" and may not be disturbed on review if his disability determination is supported by substantial evidence. <u>Brown v. Astrue</u>, No. CV-08-3653, 2010 U.S. Dist. Lexis 62348, at *19 (E.D.N.Y. June 22, 2010) (citing <u>Tejada v. Apfel</u>, 167 F.3d 770, 776 (2d Cir. 1999); <u>Aponte v. Sec'y of Health and Human Servs.</u>, 728 F.2d 588, 591 (2d Cir. 1984)).

Here, following the two-step analysis for evaluating a claimant's assertions of his subjective symptoms, the ALJ first found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" T. 16. At step two, however, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." T. 16. Even though the ALJ did not explicitly discuss all of the credibility factors set forth above in his evaluation of Plaintiff's credibility, his decision set forth sufficient reasoning, was supported by the evidence in the record, and explicitly stated that he did not find Plaintiff's statements credible because they were inconsistent "with the medical evidence of record since the record reveals that the claimant has had very limited medical evaluation and treatment for her alleged impairments during the time period at issue." T. 16. Specifically, the ALJ noted that Plaintiff alleged that she is unable to work due

to disabling back and knee problems and degenerative disc disease. T. 15, 137-144. However, as the ALJ pointed out, there are no medical evaluations or treatment notes from the relevant time period in the record. T. 16. Rather, the record shows that <u>prior</u> to June 1, 2006, Plaintiff was seen by Dr. Patel for complaints of chronic low back and radicular pain and that these conditions were effectively managed through the administration of injections, physical therapy (including the use of a home TENS unit), and pain medications. After June 30, 2006 up through 2009, Plaintiff saw treating physicians Budd, Singh, Cesarz, and Molinari, complaining of worsening low back and radicular pain. T. 342-343, 350-361. While treatment notes post-dating June 30, 2006 make reference to Plaintiff's chronic back pain and related symptoms, there is a lack of supporting medical evidence for the relevant period of June 1, 2006 to June 30, 2006. Thus, the ALJ properly discounted Plaintiff's allegations of disabling pain and related symptoms during the relevant time period.

Plaintiff also argues that the ALJ's credibility assessment is flawed because he failed to consider Plaintiff's strong work history. Pl's Mem at 18. Plaintiff points out that her attorney specifically requested that the ALJ consider that Plaintiff "'has a strong, solid work history with consistent work credits from 1977 into 2000'" and that "'she continued to try to work as possible.'" <u>Id.</u> (citing T. 209-210). Plaintiff asserts that the "ALJ erred in

failing to acknowledge this as part of his credibility analysis."
Pl's Mem. at 18.

Although work history may be deemed probative of credibility,
it is only one of the many factors to be considered. Campbell v.
Astrue, 465 F. App'x 4, 7 (2d Cir. 2012); Wavercak v. Astrue, 420
F. App'x 91, 94 (2d Cir. 2011) (citing Schaal v. Apfel, 134 F.3d
496, 502 (2d Cir. 1998)).  Here, the ALJ's failure to mention her
work history in arriving at his disability determination does not
undermine his credibility assessment since there is substantial
evidence in the record supporting the ALJ's disability
determination. Id. (citing Wavercak, supra).  Specifically, while
the record shows that Plaintiff had a history of chronic physical
and mental impairments, there is a lack of medical evidence in the
record showing that she was medically evaluated or treated for same
during the relevant time period.  Further, the evidence that post-
dates the relevant time period shows that while Plaintiff suffered
from physical and mental impairments that mildly to moderately
affected her functional limitations, these impairments did not
prevent her from performing all types of work.  Moreover, it is
noteworthy that the ALJ did not discount Plaintiff's claims of
disability altogether, but, instead, found that they were not
"entirely credible" to the extent they were inconsistent with the
medical evidence in the record.  The ALJ's RFC determination –– that
Plaintiff was capable of performing a range of sedentary work during

-14-

the relevant period -- takes into account Plaintiff's statements regarding her difficulties standing, walking, and sitting for extended periods of time.  T. 32.

Accordingly, the Court finds that the ALJ's credibility assessment is proper as a matter of law and is supported by substantial evidence.

**IV.   The ALJ's Duty to Develop the Record**

Plaintiff argues that the ALJ failed to fully develop the record because he did not obtain a consultative exam and related medical records from Plaintiff's prior social security file purportedly filed in 2006.  Plaintiff alleges that this evidence "could have provided the valuable medical evidence that the ALJ believed was lacking" to find her disabled during the relevant time period.  Pl's Mem at 19.  The Court is unpersuaded by this argument.

"Although the claimant has the general burden of proving that he or she has a disability within the meaning of the Act, because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."  Ubiles v. Astrue, No. 11-CV-6340T(MAT), 2012 U.S. Dist. LEXIS 100826, 2012 WL 2572772, at *7 (W.D.N.Y. July 2, 2012) (internal quotations omitted).  This duty to develop the record exists even when, as here, the claimant is represented by counsel.  Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996).  Where there is reason to believe that additional information is necessary

to reach a decision, the ALJ is required to develop a complete medical history of the claimant for at least a twelve month period prior to the application date.  Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

Here, the ALJ discharged his duty to develop the record by inquiring into Plaintiff's prior disability filing during the hearing, and by requesting additional evidence after the hearing from medical examiner Dr. Thomas Weiss for purposes of determining whether Plaintiff was disabled during the relevant time period. T. 206-207.

A review of the record reflects that during Plaintiff's hearing, the ALJ asked Plaintiff if she remembered filing a claim for benefits in 2006.  T. 37.  Plaintiff responded, "I started to go through the process of filling all the papers out and, yes, I do."  T. 37.  The ALJ then asked Plaintiff, "[d]id the Agency send you to see a doctor at that time, do you remember?"  T. 37. Plaintiff responded, "[y]es, I believe they did."  T. 37.  At the close of the hearing, the ALJ stated, on the record, that "there's a prior filing and I'm not sure we attempted to get the prior file." T. 42.  In response, Plaintiff's attorney stated, "I don't have it on my CD, your Honor."  T. 42.  The ALJ explained that it was filed November 1, 2006 and closed out December 11, 2007.  Plaintiff's attorney then asked the ALJ if he knew the prior onset date, to which the ALJ responded, "[m]aybe.  I have an electronic shell, I

just don't have the file.  I suspect it's a paper file.  At that point, the alleged onset date was 1/1/02.  So at the very least I want to try to get that and see if it exists because it may have medical that pertains to the period."  T. 42-43.  The ALJ stated, "I'll diary it for March 17, 30 days out, and try to get that paper file.  If we get it, we'll let you know so you can take a look at it.  Depending on what's in that file or what's not in that file, I may or may not get an ME on the onset date."  T. 43. Subsequently, in a letter dated September 6, 2011, the ALJ notified Plaintiff's counsel that he had "secured additional evidence that [he] propose[d] to enter into the record" in the form of a Response to Medical Interrogatory completed by Dr. Thomas H. Weiss.  T. 206-207.  In his response form, Dr. Weiss indicated that he had reviewed the evidence in the file and reported that there was insufficient objective medical evidence to allow him to form opinions about the nature and severity of Plaintiff's impairments during the relevant time period.  T. 400.  Dr. Weiss reported that Plaintiff's impairments did not meet or equal orthopedic listings 1.02 or 1.04 because there was "inadequate documentation" from the relevant time period.  T. 401.  Dr. Weiss was supplied with a medical source statement and identified no functional limitations.  T. 403-406.

Despite the fact that the ALJ inquired about the prior social security file at Plaintiff's hearing and subsequently obtained additional evidence from medical expert Dr. Weiss, Plaintiff faults

the ALJ for failing to specifically "state what efforts, if any, were made to obtain Plaintiff's prior paper file from Social Security's storage facility." Pl's Mem at 20. She asserts that, "[i]t does not appear, on review of the administrative record, that any internal efforts were made to obtain the paper file." Id.

Initially, based on the exchange between the ALJ, Plaintiff, and Plaintiff's attorney at the hearing, it is unclear whether the 2006 disability file even existed. Even if it did, there is no reason to believe that it would have contained evidence that would have altered the ALJ's disability determination. This is so because the evidence in the record shows that Plaintiff received medical care prior to June 1, 2006 for low back and radicular pain, and that these physical impairments were effectively managed with a combination of injections, physical therapy, and pain medication. There is no evidence in the record that suggests that Plaintiff's conditions became worse from June 1, 2006 to June 30, 2006, or that Plaintiff was even medically evaluated and/or continued to receive treatment for her impairments during that particular time period. See 42 U.S.C. § 423(a)(1)(A) (complainant required to demonstrate that she was disabled as of the date on which she was last insured); see also Arnone v. Bowen, 882 F.2d 34, 37 (2d Cir. 1989) (eligibility for benefits is dependent on showing that the claimant was insured and disabled during the insured period). Furthermore, the record further shows that after the relevant time period,

Plaintiff made medical visits to various doctors, including orthopedic surgeon Molinari, complaining of worsening low back and radicular pain. It was not until 2009 -- long after the relevant time period -- that treatment notes show that Plaintiff's back condition and related pain had progressed and that, due to her "poor quality of life," she was now a good candidate for surgery. T. 223, 243-244.

Moreover, at the time the ALJ made his disability determination he had before him a longitudinal picture of Plaintiff's physical and mental history, which included copious medical records and treatment notes from Plaintiff's treating physicians dating back to 2004 up through 2009. He also had before him various consultative opinions post-dating the relevant time period, none of which assessed that Plaintiff's mental and/or physical functional limitations prevented her from performing all forms of work. Rather, Dr. Toor's 2009 consultative opinion assessed that Plaintiff had "moderate" to "mild" physical limitations. Likewise, Dr. Ransom's 2009 consultative psychologic opinion assessed that Plaintiff had only moderate mental limitations. The ALJ also had before him the January 2010 report from non-examining State Agency psychologist R. Nobel who concluded that there was "insufficient evidence" in the record to make a determination as to the severity of Plaintiff's mental limitations during the relevant period. After reviewing the evidence in the file, Nobel determined that Plaintiff had "mild" to

"moderate" work-related mental limitations that would not preclude her from "working simple task[s]."  T. 326.

Accordingly, because the ALJ inquired into Plaintiff's prior disability filing and subsequently obtained additional evidence from medical expert Dr. Weiss with respect to Plaintiff's impairments during the relevant time period, the Court finds that the ALJ sufficiently complied with his duty to develop the administrative record.

## CONCLUSION

The Commissioner's Motion for Judgment on the Pleadings is granted (Dkt. No. 16), the Plaintiff's motion is denied (Dkt. No. 17), and the Complaint (Dkt. No. 1) is dismissed in its entirety with prejudice.

**IT IS SO ORDERED.**

**S/Michael A. Telesca**

_____

HONORABLE MICHAEL A. TELESCA
United States District Judge


DATED:     July 21, 2014
           Rochester, New York